1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                        * * *
                                          )
9    KATHLEEN NICHOLS,                     )
                                          )
10              Plaintiff,                  )            03:04-CV-00559-LRH-LRL
                                          )
11   v.                                    )            ORDER
                                          )
12   JAMES L. HAGER, in his official capacity )
     and individual capacity; LAURA DANCER, )
13   in her official capacity and individual )
     capacity; and WASHOE COUNTY SCHOOL )
14   DISTRICT, a political subdivision of the State )
     of Nevada,                           )
15                                         )
                Defendants.                )
16                                         )
                                          )
17   ─────────────────────────────────────)

18          Presently before the court is a Motion for Partial Summary Judgment (# 37[1]) filed by

19   defendants James L. Hager, Ph.D., Laura Dancer, and the Washoe County School District

20   (collectively, "Defendants").  Plaintiff Kathleen Nichols ("Nichols") has filed an opposition (# 57),

21   and Defendants replied (# 57).

22   **I.  Factual Background**

23          In 1998, Jeffrey Blanck ("Blanck"), the former General Counsel to the Washoe County

24   School District (the "District"), hired Nichols as his administrative assistant in the District's legal

25   ─────────────────────

26          [1]Refers to the court's docket number.

department.  On January 16, 2004, Blanck was suspended from his position as General Counsel.

On March 23, 2004, Nichols attended a public school board meeting.  Nichols sat next to Blanck

during the meeting.

Prior to the March 23, 2004, meeting, defendant Laura Dancer ("Dancer") told Nichols that

Nichols would retain her position as an administrative assistant to the legal division.  The following

day, March 24, 2004, Dancer informed Nichols that Nichols would not return to the legal division

because Dancer questioned Nichols's loyalty to the school district.  Dancer further informed

Nichols that Nichols could have one of two positions in the personnel division and that her salary

would be temporarily frozen.  Nichols subsequently retired from her position on April 1, 2004.

**II.  Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along

with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).  For those

issues where the moving party will not have the burden of proof at trial, the movant must point out

to the court "that there is an absence of evidence to support the nonmoving party's case."  *Catrett,*

1    477 U.S. at 325.

2        In order to successfully rebut a motion for summary judgment, the non-moving party must

3    point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

4    *Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that

5    might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*,

6    477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

7    summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A

8    dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

9    jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere

10   existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to

11   establish a genuine dispute; there must be evidence on which the jury could reasonably find for the

12   plaintiff.  *See id.* at 252.

13   **III.  Discussion**

14       In the present motion, Defendants seek summary judgment on Nichols's first and eighth

15   claims for relief.  Nichols's first claim for relief alleges retaliation for the exercise of her First

16   Amendment right to freedom of association.  Nichols's eighth claim for relief alleges that

17   defendants Dancer and James L. Hager, Ph.D. ("Hager") made false and defamatory statements

18   concerning Nichols.  The court will address each cause of action separately.

19       **A.  First Amendment Retaliation**

20       Defendants argue that Nichols's First Amendment claim fails because Nichols was a

21   confidential employee.  Alternatively, Defendants argue that Nichols's association with Blanck did

22   not involve a matter of public concern.  Finally, Defendants argue that, to the extent Nichols is not

23   a confidential employee and did associate with Blanck on a matter of public concern, the District

24   has a legitimate interest in maintaining the integrity of and avoiding disruption in the legal

25   department that outweighs Nichols's right to associate with Blanck.  Nichols argues that she is not

26                                          3

1   a confidential employee because politics played no role in the performance of her job duties.

2   Nichols further argues that she has set forth all elements constituting her first cause of action.

3   A cause of action involving the right of association is analyzed under the framework used

4   for claims involving speech. *See Hudson v. Craven*, 403 F.3d 691, 698 (9th Cir. 2005). Therefore,

5   in order to establish a prima facie case of retaliation, a public employee must show the following:

6   (1) she engaged in protected speech; (2) the defendants took an adverse employment action against

7   her; and (3) her speech was a substantial motivating factor for the adverse employment action.

8   *Thomas v. City of Beaverton*, 379 F.3d 802, 807-08 (9th Cir. 2004).

9   "[A] threshold inquiry in a claim for First Amendment retaliation is whether the employee

10   was a policymaking or confidential employee." *Blanck v. Hager*, 360 F.Supp.2d 1137, 1148 (D.

11   Nev. 2005). Whether an employee is a policymaking or confidential employee is a mixed question

12   of fact and law. *Walker v. City of Lakewood*, 272 F.3d 1114, 1132 (9th Cir. 2001). "Determining

13   the particular duties of a position is a factual question, while determining whether those duties

14   ultimately make that position a policymaking or confidential question is a question of law." *Id*.

15   The question that must be decided is "'whether the hiring authority can demonstrate that [politics]

16   is an appropriate requirement for the effective performance of the public office involved.'" *Hobler*

17   *v. Brueher*, 325 F.3d 1145, 1152 (9th Cir. 2003) (quoting *Fazio v. City & County of San Francisco*,

18   125 F.3d 1328, 1333 (9th Cir. 1997)). The analysis of whether an employee should be considered a

19   confidential employee or policymaker is not limited to party affiliation, but applies more broadly to

20   political beliefs, expression, and support. *Id*. at 1149.

21   In *Hobler v. Brueher*, the Ninth Circuit considered whether two secretaries who were fired

22   by a newly elected prosecutor were confidential employees. 325 F.3d at 1149-52. The *Hobler*

23   court noted that most offices have "key personnel who aren't policymakers . . . but who are critical

24   to effective policy implementation, and whose loyalty and confidentiality are necessary." *Id*. at

25   1151. The court continued, "[i]t is hard to run any sort of office without certain employees who

26

4

1   work so closely with the outgoing boss that any incoming boss must have the option of picking his

2   or her own people for that position." *Id*. at 1152.  Under the circumstances of that case, the *Hobler*

3   court found that the two secretaries held positions as such key personnel.  *Id*.  The two secretaries

4   were in such a position that they functioned as the prosecutor's conduit for the most sensitive

5   information.  *Id*. at 1152.

6          The two secretaries had duties that included advising the prosecutor on whom to hire,

7   giving the prosecutor confidential notes of what was said at meetings, serving as a witness to sit in

8   on sensitive conversations, reporting to the prosecutor on performance issues relating to the office's

9   attorneys, administering payroll, and serving as a liaison between the elected official and the

10  balance of the populace.  *Id*. at 1147.  Thus, the *Hobler* court found that loyalty was "an appropriate

11  requirement for the effective performance of the public office involved.  *Id*. at 1152.  In reaching

12  that conclusion, the court stated, "[w]ithout a confidential secretary the official can trust to carry

13  out his views, funnel communications in and out according to his priorities, and represent him in a

14  way that enhances rather than damages his reputation, an elected official cannot effectively perform

15  his office."  *Id*.

16         The court finds the case at bar analogous to *Hobler* in that Nichols was a confidential

17  employee.  Nichols's position required her to perform difficult and highly responsible secretarial

18  work.  (Defs.' Mot. for Partial Summ. J. (# 37), Dep. of Kathleen Nichols, Ex. 1 at 44:9-15.)

19  Nichols was further required to frequently exercise independent judgment in applying and

20  interpreting district or division policies, regulations and procedures.  *Id*. at 44:16-20.  Nichols's job

21  description provided that she would serve "as the primary administrative assistant to the school

22  district attorney, providing support in district legal matters which may involve, but are not limited

23  to, litigation, arbitration, due process hearings, employee and student complaints, personal injury,

24  student records and district contact reviews."  (Pl.'s Opp'n to Defs.' Mot. (# 54), Nichols's Job

25  Description, Ex. 6.)  Nichols was further "[a]ccountable for upholding strict rules and guidelines of

26

5

1 confidentiality." *Id*.

2   The District questioned Nichols's loyalty to the school district after Nichols sat next to

3 Blanck at the March 23, 2004, meeting. (Pl.'s Opp'n to Defs.' Mot. (# 54), Dep. of Kathleen

4 Nichols, Ex. 1 at 123:16-22.)  In fact, the evidence shows that Nichols had discussed Blanck's

5 employment situation with Blanck on several occasions between November 19, 2003, and January

6 16, 2004.  (Defs.' Mot. for Partial Summ. J. (# 37), Dep. of Kathleen Nichols, Ex. 1 at 79:5-13.)

7 Furthermore, Nichols, as Blanck's administrative assistant, prepared documents for Blanck to

8 present to the Washoe County school trustees relating to Blanck's dispute with the District.  *Id*. at

9 65:17-23.  The evidence further shows that Nichols told Blanck, on the day he left, that outside

10 counsel and Dancer would be beginning work and reviewing files the following week.  (Pl.'s Opp'n

11 to Defs.' Mot. (# 54), Dep. of Laura Dancer, Ex. 3 at 55:12-22.)  At the very least, Nichols's

12 association with Blanck creates an inference that Nichols may have supported Blanck as opposed to

13 the District.

14   Looking at these facts in the light most favorable to Nichols, the court finds that loyalty is

15 "an appropriate requirement for the effective performance of the public office involved."  *See*

16 *Hobler*, 325 F.3d at 1152.  The District was entitled to have a legal department in which its general

17 counsel's administrative assistant was loyal to the district and an administrative assistant that the

18 District could trust to handle sensitive legal matters.  As a matter of law, Nichols was a confidential

19 employee and is therefore not entitled to claim First Amendment retaliation under the

20 circumstances which are before the court.  Defendants motion for summary judgment will be

21 granted with regard to Nichols's first claim for relief.

22   **B. Defamation**

23   Defendants seeks summary judgment on Nichols's defamation claim arguing that Nichols

24 cannot show a false and defamatory statement by a defendant or that there was an unprivileged

25 publication to a third person.  In opposition to summary judgment, Nichols argues that Defendants'

26               6

1   motion for summary judgment contains false and defamatory statements that were published to a

2   third person because they are contained in a public document.

3           "The general elements of a defamation claim require a plaintiff to prove: '(1) a false and

4   defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a

5   third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'"

6   *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002) (quoting *Chowdhry v. NLVH, Inc.*,

7   851 P.2d 459, 462 (Nev. 1993)).

8           In this case, Nichols has not identified any alleged false and defamatory statement other

9   than certain statements contained in Defendants' motion for summary judgment.  However, the

10  actual defamation claim raised in Nichols's complaint relates to alleged false and defamatory

11  statements made by Dancer and Hager related to accusing Nichols of being disloyal.  This

12  defamation claim must fail.  In her deposition, Nichols acknowledged that she had no knowledge

13  that the alleged defamatory statement was ever communicated to anyone else.  (Defs.' Mot. for

14  Partial Summ. J. (# 37), Dep. of Kathleen Nichols, Ex. 1 at 136:9-137:4.)  Furthermore, a

15  defamation claim cannot lie from alleged defamatory statements contained in Defendants' motion

16  for partial summary judgment.  *See Fink v. Oshins*, 49 P.3d 640, 643-44 (Nev. 2002).  For these

17  reasons, summary judgment will be granted.

18          Defendants are also seeking sanctions against Nichols for their "excess costs, expenses, and

19  attorney's fees" incurred in defending against this claim.  Although it appears to the court that

20  Nichols's defamation claim may be frivolous, the court will not impose sanctions because

21  Nichols's defamation claim played a *de minimis* role in this action.

22  ///

23  ///

24  ///

25  ///

26                                              7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

        IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment (# 37) is hereby GRANTED.

        IT IS SO ORDERED.

        DATED this 29th day of March, 2007.

                                        _____
                                        LARRY R. HICKS
                                        UNITED STATES DISTRICT JUDGE

8